UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

RAY ANN HOWARD,
O/B/O A.B., a minor child,

      Plaintiff,                           Civil Action No. 12-11652

v.                                  HON.  THOMAS L. LUDINGTON
                                  U.S. District Judge
                                  HON. R.  STEVEN WHALEN

COMMISSIONER OF SOCIAL        U.S. Magistrate Judge
SECURITY,

      Defendant.
_____/

## REPORT AND RECOMMENDATION

Plaintiff Ray Ann Howard brings this action on behalf of her minor grandson under 42 U.S.C. §405(g), challenging a final decision of Defendant Commissioner denying her application for Childhood Supplemental Security Income under the Social Security Act. Both parties have filed summary judgment motions which have been referred for a Report and Recommendation pursuant to 28 U.S.C. § 636(b)(1)(B).  For the reasons set forth below, I recommend that Defendant's Motion for Summary Judgment [Doc. #19] be GRANTED, and that Plaintiff's Motion for Summary Judgment [Doc. #14] be DENIED.

## PROCEDURAL HISTORY

Plaintiff, proceeding on behalf of her minor grandson ("Claimant"), applied for Childhood Supplemental Security Income on August 5, 2008, alleging disability as of

January 1, 2006 (Tr. 90, 94-95).  On May 24, 2010, Administrative Law Judge ("ALJ")

Andrew G. Sloss presided at an administrative hearing held in Flint, Michigan (Tr. 26).

Plaintiff, Claimant, and Claimant's mother testified (Tr. 35-57).  On February 15, 2010, ALJ

Sloss found Claimant not disabled (Tr. 22).  On March 6, 2012, the Appeals Council denied

review (Tr. 1-4).   Plaintiff filed for judicial review of the final decision on April 10, 2012.

## BACKGROUND FACTS

Claimant, born January 13, 2005, was five when  ALJ Sloss issued his decision (Tr.

22, 90).  Plaintiff originally alleged disability on the basis of speech and behavior problems

and "possible autism" (Tr. 138).

### A.  The Hearing Testimony

Plaintiff, Claimant's mother, and Claimant offered the following testimony:[1]

According to Plaintiff and Claimant's mother, Claimant was disabled as a result of

Attention Deficit Hyperactivity Disorder ("ADHD"), asthma, and speech and language delay

(Tr. 35).  He experienced asthma since birth and was currently receiving treatment for the

condition (Tr. 36). He currently took Albuterol for asthma and Methylin for ADHD (Tr. 39).

He was enrolled in a Head Start program in Saginaw, Michigan (Tr. 39).  He had three

siblings, ages, thirteen, nine, and two (Tr. 40).  He liked to play and fight with his oldest

sibling (Tr. 40).  Claimant could identify colors (Tr. 41).  He was able to understand but did

not always follow directions by his mother and grandmother (Tr. 42).

---

[1]Testimony was offered by Plaintiff and Claimant's mother in no particular order.
I have denoted where Claimant (rather than his mother and grandmother) was speaking.

Claimant stated that he played "Toy Story," "Buzz Light Year," and enjoyed playing with dinosaurs and orange and yellow trucks (Tr. 43). He stated that he had a friend at school named Arianna (Tr. 45). Claimant reported that he did not experience trouble playing with blocks or throwing a ball and liked puzzles (Tr. 45-46). He stated that he rode a bicycle with training wheels and could dress himself (Tr. 46-47).

Claimant's mother and Plaintiff agreed that Claimant was impulsive and was inclined to run into the street if someone failed to hold his hand while taking a walk (Tr. 48). Humid and warm weather exacerbated Claimant's asthma, which on occasion required emergency treatment (Tr. 49). He last had an asthma attack four months before the hearing (Tr. 49-50). Claimant was described as "very, very active" with a short attention span (Tr. 50-51). His behavioral problems required Plaintiff to pick Claimant up at school on occasions (Tr. 53). On occasions, he was intermittently hyperactive and sleepy (Tr. 54). The medicine prescribed for ADHD was currently losing its effectiveness (Tr. 55).

### B.    Medical and Academic Evidence

January, 2005 hospital records created two days after Claimant's birth show he was prescribed Albuterol two days after his birth (Tr. 202). April, 2005 records show that Claimant continued to take Albuterol (Tr. 193). December, 2005 treating records show that a prescription for Benadryl was renewed (Tr. 196). In October, 2007, Plaintiff noted that Claimant "very frequently" had tantrums and became frustrated easily (Tr. 209). The evaluating teacher found that Claimant experienced the same conditions "frequently" (Tr.

-3-

211). Initiative and self control were identified as areas of concern (Tr. 212).  A July, 2008

assessment found the presence of a possible speech/language impairment  (Tr. 213).  The

same month, Claimant, formerly a ward of Saginaw County Department of Human Services,"

was placed in Plaintiff's home (Tr. 228).  Claimant passed a physical screening for

admittance to a Head Start program (Tr. 214).

An October, 2008 teacher's assessment states that Claimant did not exhibit behavior

giving rise to concerns on a "very frequent" basis, but that he expressed frustration and

became emotional "frequently" (Tr. 211).   The same month, Head Start notes state that

Claimant experienced asthma (Tr. 287).  Kathryn Kraijkowski found that Claimant "would

benefit from mental health interventions for the classroom and home environment" (Tr. 220).

Westlund Guidance Clinic findings state that Claimant experienced "significant" interference

from psychological symptoms (Tr. 294).  His appearance and mood were deemed appropriate

but he exhibited defiance and hyperactivity (Tr. 294-295).  His interactions with other

children was deemed appropriate (Tr. 296).   Claimant displayed impulsivity but was

cooperative with no signs of aggression (Tr. 296).

November, 2008 case development notes state that Claimant was referred for mental

health treatment and speech therapy but did not pursue treatment (Tr. 238).  In December,

2008, Janet Topham, a diagnostic teacher, Dr. Pamela Elber, school psychologist, and

Kathleen Kinnish, a speech pathologist performed a consultative psychological evaluation

(Tr. 241-248, 298-308).   Plaintiff reported that Claimant was unusually active and

experienced difficulty focusing (Tr. 241).  Claimant exhibited good gross motor skills (Tr.

-4-

243).  His fine motor skills were found to be "slightly" below average (Tr. 243).  Claimant

was impulsive with a short attention span but improved focus during story time (Tr. 244).

His academic skills were in the low average range (Tr. 245).  He demonstrated a "severe"

phonological disorder (Tr. 246).  His "general knowledge and comprehension skills" were

deemed "somewhat delayed" (Tr. 248).  He met the criteria for special education services as

a result of a speech and language impairment (Tr. 259).

     The same month, Ron Marshall, Ph.D. completed a non-examining assessment of the

academic and treating records.  Dr. Marshall found less than marked limitations in acquiring

and using information but declined to make additional findings (Tr. 232-233).  He noted a

January, 2008 exacerbation of asthma (Tr. 233).   He found insufficient evidence for a

finding of disability (Tr. 230). December, 2008 case development notes restate that Claimant

had not received mental health or speech therapy treatment (Tr. 221-223, 239).

     In March, 2009, Ms. Kinnish found that Claimant experienced an "articulation

impairment" (Tr. 318).  Accompanying notes state that the impairment was "mild" (Tr. 320,

323, 325).  Kelly M. Mason, MACCC-SLP stated that attendance problems impacted

Claimant's progress (Tr. 323, 328).  His ability to articulate was ranked in the 11th percentile

(Tr. 328).   The same month, academic records showed that full scale, verbal, and

performance IQs were in the average range (Tr. 250).  However, his speech, was deemed

"difficult to understand" and well below average for his age level (Tr. 250, 262).

     April, 2009 Head Start records state that Claimant experienced "moderate persistent

asthma" treated with Albuterol and Benadryl "only as needed" (Tr. 284).  The same month,

his ADHD medication was changed after his mother noted that he was unfocused (Tr. 345).

In September, 2009, Claimant passed a physical exam for continued participation in Head

Start (Tr. 280-281).  February, 2010 treating notes show that Claimant continued to take

Ritalin (Tr. 335).

### C.  The ALJ's Decision

Citing the medical records submitted as of the date of his decision, ALJ Sloss found

that while Claimant experienced the severe impairments of "mild articulation disorder,

ADHD and asthma,"  the conditions did not meet or equal any listed impairments in 20

C.F.R. 404, Subpart P, Appendix 1 (Tr. 13-14).  He found that in the domain of "Acquiring

and Using Information," Claimant had "less than marked limitation" (Tr. 17).  In the domain

of "Attending and Completing Tasks," he also found "less than marked limitation" (Tr. 17).

In the domain of "Interacting and Relating to Others," the ALJ also found that Claimant had

less than "marked" limitations (Tr. 19).  The ALJ found no limitations in the domain of

"Moving About and Manipulating Objects" or the domain of "Caring for Yourself;" and less

than marked limitations in "Health and Physical Well-Being" (Tr. 19-21).

Citing the medical and academic records, the ALJ noted that Claimant last

experienced an asthma attack four months before the hearing (Tr. 15).  He observed that

recent academic records showed that Claimant's speech and language impairments were

currently "mild" (Tr. 15).  The ALJ also noted that Claimant was able to socialize with other

children and was capable of using language to make his needs known (Tr. 19).

## STANDARD OF REVIEW

The district court reviews the final decision of the Commissioner to determine whether it is supported by substantial evidence.  42 U.S.C. §405(g); *Sherrill v. Secretary of Health and Human Services,* 757 F.2d 803, 804 (6th Cir.  1985).  Substantial evidence is more than a scintilla but less that a preponderance.  It is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  *Richardson v. Perales,* 402 U.S. 389, 401, 91 S.Ct. 1420, 28 L.Ed.2d 842 (1971) (*quoting Consolidated Edison Co. v. NLRB,* 305 U.S. 197, 229, S. Ct. 206, 83 L.Ed.126 (1938)). The standard of review is deferential and "presupposes that there is a 'zone of choice' within which decision makers can go either way, without interference from the courts." *Mullen v. Bowen,*   800 F.2d 535, 545 (6th Cir. 1986)(en banc).  In determining whether the evidence is substantial, the court must "take into account whatever in the record fairly detracts from its weight." *Wages v. Secretary of Health & Human Services*, 755 F.2d 495, 497 (6th Cir. 1985). The court must examine the administrative record as a whole, and may look to any evidence in the record, regardless of whether it has been cited by the ALJ.  *Walker v. Secretary of Health and Human Services*, 884 F.2d 241, 245 (6th Cir. 1989).

## FRAMEWORK FOR DISABILITY DETERMINATIONS

### Childhood Benefits

42 U.S.C. § 1382c (a)(3)(C)(I) provides that "[a]n individual under the age of 18 shall be considered disabled" if he or she "has a medically determinable physical or mental

impairment which results in marked and severe functional limitations."[2]   In evaluating

whether a child is disabled, the Commissioner is to consider, in sequence, whether the child

claimant 1) is "doing substantial gainful activity" 2) has a severe impairment, and if so 3)

has "an impairment(s) that meets, medically equals, or functionally equals the listings." 20

C.F.R. § 416.924(a).  In determining whether the child claimant is disabled at the third step,

the Commissioner determines functional ability in six domains:

> (i) Acquiring and using information;

> (ii) Attending and completing tasks;

> (iii) Interacting and relating with others;

> (iv) Moving about and manipulating objects;

> (v) Caring for yourself; and,

> (vi) Health and physical well-being.

> 20 C.F.R. § 416.926a(b)(1).

To establish disability at the third step, "the impairment(s) must  . . .  result in

'marked' limitations in two domains of functioning or an 'extreme' limitation in one

domain." *Id.*  A "marked" limitation is defined as an impairment(s) that "interferes seriously"

with the ability "to independently initiate, sustain, or complete activities." 20 C.F.R. §

---

[2]Childhood claims are subject to the same 12-month durational requirement as adult claims. 42 U.S.C. § 1382c (a)(3)(C)(i)

416.926a(e)(2). An "extreme" limitation "interferes *very* seriously" with the ability "to independently initiate, sustain, or complete activities"(emphasis added).   20 C.F.R. § 416.926a(e)(3).

## ANALYSIS

Addressing the third step of the sequential analysis, Plaintiff disputes the ALJ's conclusions in five of the six domains of functioning. *Plaintiff's Brief* at 4-12, *Docket #14* (citing Tr. 17-21).   She does not contest the ALJ's finding in the domain of "moving about and manipulating objects," but  argues that he erred by finding less than marked limitations in the remaining five categories.  *Id.*

### A.  Acquiring and Using Information

Plaintiff argues first that Claimant has marked limitations in acquiring and using information.  *Plaintiff's Brief* at 4-6.  She cites a September, 2008 academic finding that Claimant, then three, knew only his first name and was unable to identify more than two out of five colors.  *Id.* at 5 (citing Tr. 215).  Plaintiff also notes that in December, 2008, a psychological evaluation showed that Claimant had difficulty sitting still for a story, identifying all the letters of the alphabet, and pronouncing words correctly.  *Id.* (citing Tr. 242).

In childhood disability claims, a marked limitation is defined as follows

(i) We will find that you have a marked limitation in a domain when your impairment(s) interferes seriously with your ability to independently initiate, sustain, or complete activities. Your day-to-day functioning may be seriously

limited when your impairment(s) limits only one activity or when the interactive and cumulative effects of your impairment(s) limit several activities. Marked limitation also means a limitation that is more than moderate but less than extreme. 20 CFR § 416.926a(e)(2)(internal quotations omitted).

Section 416.926a(g)(3) contains a non-exhaustive list of signs of impairment in acquiring and using information:

(i) You do not demonstrate understanding of words about space, size, or time; e.g., in/under, big/little, morning/night. (ii) You cannot rhyme words or the sounds in words. (iii) You have difficulty recalling important things you learned in school yesterday. (iv) You have difficulty solving mathematics questions or computing arithmetic answers. (v) You talk only in short, simple sentences and have difficulty explaining what you mean.

However, the mere presence of these limitations does not imply that the they are marked or extreme. § 416.926a(f)(3). Instead, determination of whether these impairments are marked or extreme depends upon the available evidence in each case. *Id.*

Substantial evidence supports the ALJ's conclusion that Claimant's limitations in this domain were less than marked. In support of his finding, the ALJ correctly noted that Claimant was able to identify colors and that a speech impairment did not prevent him from using "verbal language to make his wants and needs known" (Tr. 17, 43). A December, 2008 evaluation, cited by Plaintiff, also shows that Claimant's cognitive abilities were average and that his focus was improved during story time (Tr. 244-245). While Claimant exhibited "somewhat delayed" development in speech and comprehension, he also scored above age level in two sub-categories and was age appropriate in three others (Tr. 247-248). Notwithstanding March, 2009 academic records showing that Claimant's speech was

"difficult to understand" and well below average for his age level (Tr. 250, 262), intelligence

test results from the same month were in the average range (Tr. 250).  Aside from a mild

speech impairment, Claimant was deemed able to progress in the general curriculum (Tr.

251, 320, 323, 325).

### B.  Attending and Completing Tasks

Plaintiff likewise disputes the ALJ's finding that Claimant had less than marked

limitation in attending and completing tasks.  *Plaintiff's Brief* at 6-7.  She cites the October,

2008 observation that Claimant had frequent difficulty following a routine or staying on task.

*Id.* at 7 (citing Tr. 211).

In regard to attending and completing tasks, § 416.926a(h)(2)(iii) states as follows:

As a preschooler, you should be able to pay attention when you are spoken to
directly, sustain attention to your play and learning activities, and concentrate
on activities like putting puzzles together or completing art projects. You
should also be able to focus long enough to do many more things by yourself,
such as getting your clothes together and dressing yourself, feeding yourself,
or putting away your toys. You should usually be able to wait your turn and to
change your activity when a caregiver or teacher says it is time to do
something else.

The ALJ's finding of less than marked limitations in this domain is admittedly a closer

call.  Academic records show that Claimant exhibited a number of signs of impairment in this

domain, including (i) distraction, (iii) becoming side-tracked, (iv) abandoning tasks.  Section

416.926a(h)(3).   Nonetheless, substantial evidence supports the conclusion that the

impairment was less than marked.  The December, 2008 evaluation states that Claimant was

-11-

responsive to verbal praise, was able to engage in large motor activities, showed pride in his accomplishments, and was able to work up to 20 minutes without breaks (Tr. 242, 244, 248, 272).   Notably, while evaluating staff recommend an intervention for speech therapy, Claimant did not receive a similar referral for ADHD (Tr. 259).

### C.  Interacting and Relating with Others

The ALJ's finding that Claimant did not experience marked limitations in this domain is well supported (Tr. 18-19).  Limitations in this domain may be shown by the following signs:

> (i) You do not reach out to be picked up and held by your caregiver. (ii) You have no close friends, or your friends are all older or younger than you. (iii) You avoid or withdraw from people you know, or you are overly anxious or fearful of meeting new people or trying new experiences. (iv) You have difficulty playing games or sports with rules. (v) You have difficulty communicating with others; e.g., in using verbal and nonverbal skills to express yourself, carrying on a conversation, or in asking others for assistance. (vi) You have difficulty speaking intelligibly or with adequate fluency.
> 20 CFR § 416.926a(i)(3).

However, the presence of such limitations does not imply the individual experiences marked limitations in this domain.  *Id.*

Notwithstanding Claimant's mild speech impairment, the record supports a finding of less than marked limitations.  While Plaintiff notes that the October, 2008 observations include "frequent temper tantrums" and emotional outbursts (Tr. 211), the December, 2008 evaluation states that Claimant was able to interact with other children and respond to correction (Tr. 248).  In March, 2009, he was deemed impulsive but cooperative with no signs of aggression (Tr. 296).  Claimant testified at the hearing that he played with a friend

at school (Tr. 45).  He responded positively to adult attention and praise (Tr. 242, 244, 248).

### D.  Ability to Care for Himself

Plaintiff argues that substantial evidence does not support the finding that Claimant

had no limitations in the ability to care for himself. *Plaintiff's Brief* at 10-11.  She again cites

the October, 2008 observation that Claimant had temper tantrums and was impatient (Tr.

211).

Section 416.926a (k)(2)(iii) lists a number of the expected capabilities of a

preschooler in this domain:

> You should want to take care of many of your physical needs by yourself (e.g.,
> putting on your shoes, getting a snack), and also want to try doing some things
> that you cannot do fully (e.g., tying your shoes, climbing on a chair to reach
> something up high, taking a bath). Early in this age range, it may be easy for
> you to agree to do what your caregiver asks. Later, that may be difficult for
> you because you want to do things your way or not at all. These changes
> usually mean that you are more confident about your ideas and what you are
> able to do. You should also begin to understand how to control behaviors that
> are not good for you (e.g., crossing the street without an adult).

Examples of impairment in this domain include (i) "thumbsucking [or] re-chewing

food, (ii) "rocking [or] headbanging,"(iii) the inability to dress oneself, or, (iv) ignoring

safety rules. § 416.926a (k)(3).  While Plaintiff testified that Claimant did not always respond

to her warnings to avoid hazards (Tr. 48) and the December, 2008 evaluation states that

Claimant engaged in impulsive behaviors, the transcript also supports the conclusion that he

did not experience significant impairment in this domain.  Claimant exhibited independence

in self care activities, was age appropriate in grooming and was advanced for his age in

toileting and using utensils (Tr. 247).  He testified that he was able to dress himself, ride a

bike with training wheels, and wash his hands (Tr. 46-47).  Even assuming that Claimant

experienced some level of limitation in this domain, the evidence does not support the

conclusion that he experienced marked difficulties.

### E.  Health and Physical Well-Being

Plaintiff argues last that the ALJ erred by finding less than marked limitations in

health and physical well-being.  *Plaintiff's Brief* at 11-12.  She notes that the ALJ failed

to mention the condition of asthma in discussing this domain. *Id.* at 12.

Plaintiff's contention that asthma created a marked impairment does not provide

grounds for remand.  The criteria for a marked limitation in this domain is as follows:

> [W]e may also consider you to have a marked limitation if you are frequently
> ill because of your impairment(s) or have frequent exacerbations of your
> impairment(s) that result in significant, documented symptoms or signs. For
> purposes of this domain, frequent means that you have episodes of illness or
> exacerbations that occur on an average of 3 times a year, or once every 4
> months, each lasting 2 weeks or more. We may also find that you have a
> marked limitation if you have episodes that occur more often than 3 times in
> a year or once every 4 months but do not last for 2 weeks, or occur less often
> than an average of 3 times a year or once every 4 months but last longer than
> 2 weeks, if the overall effect (based on the length of the episode(s) or its
> frequency) is equivalent in severity. 20 C.F.R. § 416.926a(e)(2)(iv)(internal
> quotation marks omitted).

Claimant's asthma symptoms do not meet the above-stated criteria.  To be sure, the

record shows that he required medication for asthma and according to Plaintiff's testimony,

received emergency treatment in the past (Tr. 49).  However, neither the treating nor

academic records suggest that the condition significantly impacted Claimant's functioning,

much less created a marked limitation.  Plaintiff testified that Claimant had not had an asthma

attack in the four months preceding the hearing (Tr. 49-50).  Head Start records state that

Claimant took asthma medicine "only as needed" (Tr. 284).   Asthma symptoms did not

prevent him from passing multiple physical exams required for participation in Head Start

(Tr. 214, 280-281).

While Plaintiff also faults the ALJ for omitting mention of asthma in his analysis of

this domain, he included accurate summation of the asthma treatment records earlier in the

administrative opinion (Tr. 13).  There is no basis to conclude that the ALJ did not consider

asthma when determining the severity of Claimant's physical problems.

In closing, I note that the record shows that Claimant experienced some family

upheavals during his preschool years and my recommendation to uphold the Commission's

determination should not be read to trivialize these experiences.  Nonetheless, because the

determination that Claimant was not disabled is well within the "zone of choice" accorded

to the fact-finder at the administrative hearing it should not be disturbed by this Court.

*Mullen v. Bowen*, *supra*.


## CONCLUSION

For the reasons stated above, I recommend that Defendant's Motion for Summary

Judgment [Doc. #19] be GRANTED, and that Plaintiff's Motion for Summary Judgment

[Doc. #14] be DENIED.

Any objections to this Report and Recommendation must be filed within 14 days of service of a copy hereof as provided for in 28 U.S.C. §636(b)(1) and E.D. Mich. LR 72.1(d)(2). Failure to file specific objections constitutes a waiver of any further right of appeal. *Thomas v. Arn,* 474 U.S. 140, 106 S.Ct. 466, 88 L.Ed.2d 435 (1985); *Howard v. Secretary of HHS,* 932 F.2d 505 (6th Cir. 1991); *United States v. Walters,* 638 F.2d 947 (6th Cir. 1981). Filing of objections which raise some issues but fail to raise others with specificity will not preserve all the objections a party might have to this Report and Recommendation. *Willis v. Secretary of HHS,* 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n of Teachers Local 231,* 829 F.2d 1370, 1373 (6th Cir. 1987). Pursuant to E.D. Mich. LR 72.1(d)(2), a copy of any objections is to be served upon this Magistrate Judge.

Within 14 days of service of any objecting party's timely filed objections, the opposing party may file a response. The response shall be not more than 20 pages in length unless by motion and order such page limit is extended by the court. The response shall address specifically, and in the same order raised, each issue contained within the objections.

**s/ R. Steven Whalen**
R. STEVEN WHALEN
UNITED STATES MAGISTRATE JUDGE

Dated:  May 10, 2013

CERTIFICATE OF SERVICE

The undersigned certifies that the foregoing document was served upon counsel of record via the Court's ECF System to their respective email addresses or First Class U.S. mail disclosed on the Notice of Electronic Filing on May 10, 2013.

s/Johnetta M. Curry-Williams
Case Manager